{¶ 1} Defendant-appellant, Ronald Parker (Parker), appeals his convictions for forgery and attempted theft. Having reviewed the arguments and pertinent law, we affirm.
 {¶ 2} The facts giving rise to this appeal began the evening of December 23, 2005. Parker entered a Check Smart located at 15726 Broadway Avenue, Maple Heights, Ohio, and attempted to cash a check in the amount of $156,345.82. The check named Hydralogic Systems Inc. (Hydralogic) as the payor and Parker as the payee. The check was numbered 192. Parker never executed the check by signature.
 {¶ 3} The Check Smart store manager at the time, Willard Brickey (Brickey), was unable to verify the check because it was after regular business hours, and upon further instruction from the district manager was told not to cash the check for Parker. Brickey made copies of the check and of Parker's identification and returned both to Parker. Brickey did not contact the police. Thereafter, in the early afternoon of December 29, 2005, Parker returned to the same Check Smart location and attempted to cash a second check, this time in the amount of $26,958. The check named Saunacore as the payor and Parker as the payee. The check was numbered 3826. Parker executed the check by signature. The teller, Shameka Murphy (Murphy), contacted Saunacore and *Page 4 
determined that the check was fraudulent. Murphy contacted the Maple Heights police.
 {¶ 4} When the police arrived, Parker told police that he began working for Global Seafood, Ltd. (Global Seafood), a Korean company, three weeks earlier. Parker stated that he maintained internet contact with Young Chui Kim, a Global Seafood representative, and had agreed to act as distributor for their company.
 {¶ 5} Parker told police that part of his job responsibilities included collecting checks on behalf of Global Seafood. Parker indicated that, since he did not have the opportunity to open a business account, Global Seafood gave him permission to collect checks for deposit into his personal accounts, thus explaining the checks naming Parker as payee.
 {¶ 6} It should be noted that Hydralogic is in the business of odor control and pest control, and Saunacore manufactures hot tubs and saunas. Hydralogic and Saunacore are not in the seafood business.
 {¶ 7} On March 3, 2006, a Cuyahoga County Grand Jury indicted Parker on four counts of forgery, in violation of R.C. 2913.31, and two counts of attempted theft, in violation of R.C. 2923.02 and 2913.02.
 {¶ 8} On October 17, 2006, the case proceeded to jury trial, and on October 20, 2006, the jury returned the following verdicts: guilty of two counts of forgery *Page 5 
pertaining to the $26,958 check, guilty of one count of attempted theft also pertaining to the $26,958 check, and not guilty of the remaining counts.
 {¶ 9} On December 15, 2006, the trial court sentenced Parker to one year of imprisonment for each count of forgery and six months of imprisonment for attempted theft, all to be served concurrently. On May 17, 2007, Parker filed a motion for judicial release, which was granted by the trial court.
 {¶ 10} Parker appeals, raising three assignments of error for our review.
 {¶ 11} ASSIGNMENT OF ERROR NUMBER ONE
 "The trial court committed plain error when it allowed irrelevant testimony regarding other allegedly spurious checks which unfairly prejudiced the appellant (T.173-181)."
 {¶ 12} Parker argues that the trial court erred when it admitted Murphy's testimony regarding Parker's prior check cashing transactions with Check Smart.
 {¶ 13} Parker did not object to Murphy's testimony during trial and thus, we review for plain error. State v. Moreland (1990),50 Ohio St.3d 58. Pursuant to Crim. R. 52(B): "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 14} "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise."Moreland at 62. "Therefore, we must determine (1) whether there was error in the first place; if *Page 6 
so, (2) whether the error is an obvious defect in the trial proceedings; and (3) whether the error affected the outcome of the trial." State v.Jones, Mahoning App. No. 05 MA 218, 2007-Ohio-3183.
 {¶ 15} To be admissible, evidence must be relevant. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401.
 {¶ 16} Furthermore, even when relevant, testimony is not admissible if its prejudicial effect outweighs it probative value:
 "(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 (B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.
 {¶ 17} The testimony that Parker challenges was elicited from Murphy. Murphy testified that she knew Parker prior to December 29, 2005, because he came into Check Smart four or five times previously. (Tr. 176.) Murphy recalled cashing three checks from Annie B. Parker's (Annie) credit card account made payable to Parker. (Tr. 176-77). Annie is Parker's mother. Murphy was unable to verify additional checks that Annie wrote to Parker and declined Parker's *Page 7 
final attempts to cash them. (Tr. 180.) Murphy recalled that the memo of at least one check indicated "painting." (Tr. 181.)
 {¶ 18} It must be noted that defense counsel, during opening argument, raised as a defense that it would be nonsensical for Parker to twice attempt to cash a forged check in a place where he regularly conducts business or is otherwise known. Counsel stated, "when he received this first check, he went to a place where he was well known. He had been doing business there for well over a year, a check cashing place, Check Smart * * *." (Tr. 133.)
 {¶ 19} Thus, we cannot find that the admission of Murphy's challenged testimony constitutes plain error. Murphy's testimony establishes identification of Parker and describes their prior business relationship at Check Smart, therefore, her testimony is relevant. Furthermore, there is no clear reference within Murphy's testimony that Parker committed another crime or alleged bad act when he cashed Annie's checks. Also, defense counsel utilized Parker's history with Check Smart as part of his defense in his opening argument. Thus, we conclude that the admission of Murphy's challenged testimony does not subject Parker to unfair prejudice.
 {¶ 20} Parker's first assignment of error is overruled.
 {¶ 21} ASSIGNMENT OF ERROR NUMBER TWO
 "The jury clearly lost its way when it convicted the appellant of two counts of forgery and one count of attempted theft *Page 8 when the weight of the evidence weighed in favor of a finding of not guilty on all counts."
 {¶ 22} Parker argues that his conviction is against the manifest weight of the evidence because the jury returned inconsistent verdicts. Specifically, Parker argues that the verdicts are inconsistent because the exact same facts were presented for both checks, and he was only convicted for the $26,958 check.
 {¶ 23} The Ohio Supreme Court set forth the following standard for evaluating a claim that the verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 24} We followed United States v. Powell (1984), 469 U.S. 57 andState v. Adams (1978), 53 Ohio St.2d 223, when we held that:
 "Inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict of guilt. * * * *Page 9 [J]uries can reach inconsistent verdicts for any number of reasons, including mistake, compromise, and leniency. * * * [I]t would be incongruous for a defendant to accept the benefits of an inconsistent verdict without also being required to accept the burden of such verdicts." State v. Taylor, Cuyahoga App. No. 89629, 2008-Ohio-1626.
 {¶ 25} This is so because "[e]ach count of a multi-count indictment is independent of all other counts. Accordingly, each charge is separate and independent from the others." Taylor at ___11.
 {¶ 26} R.C. 2913.31(A)(1) delineates the offense of forgery, as charged in the first count of Parker's indictment, and reads as follows:
 "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following: (1) Forge any writing of another without the other person's authority * * *."
 {¶ 27} R.C. 2913.01(G) defines "forge":
 "`Forge' means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct."
 {¶ 28} Parker presented a $26,958 check to Murphy at Check Smart on December 29, 2005. The check named Saunacore as the payor and Parker as the payee. Parker presented his own identification and executed the $26,958 check. Upon investigation for check cashing purposes, Murphy determined that the check was fraudulent. (Tr. 186.) *Page 10 
 {¶ 29} At this point, it must be noted that identical evidence was not presented regarding both checks, as Parker contends. A review of the record reveals that Parker presented and executed the check for $26,958; however, he never executed the check for $156,345.82.
 {¶ 30} Furthermore, Maple Heights police officer Michael Lingo's (Lingo) testimony established that the $26,958 check is a spurious writing that could not be authenticated by Parker's signature or execution. The statutory definition of "writing" includes a "document." R.C. 2913.01(F). Lingo determined that the phone number on the check was not the correct phone number for Saunacore. (Tr. 232-33.) After Lingo obtained the correct phone number for Saunacore, its representative confirmed the discrepancies in the check and confirmed the check's invalidity. (Tr. 248.)
 {¶ 31} "Signing one's own name and using one's own identification to cash a credit slip does not legitimize an otherwise spurious writing and constitutes a `forgery' under R.C. 2913.01(G)." State v. Bender (1985),24 Ohio App.3d 131, paragraph one of the syllabus. The same rationale applies to checks and to the facts set forth herein.
 {¶ 32} R.C 2913.31(A)(3) sets forth forgery, as charged, and provides:
 "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following: (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged." *Page 11 
 {¶ 33} Pursuant to R.C. 2913.01(H), "utter" means: "to issue, publish, transfer, use, put or send into circulation, deliver, or display." In the case sub judice, Parker displayed the check when he presented it to Murphy. As previously set forth, the writing was forged, which is a required element of forgery under R.C. 2913.31(A)(3).
 {¶ 34} Both R.C. 2913.31(A)(1) and (3) require that Parker acted either with the purpose to defraud or knowing that he was facilitating a fraud. Parker testified that he did not know that the check was fraudulent. (Tr. 311-313.) Parker also testified that he believed the checks pertained to payment for services and products that other companies purchased from Global Seafood. (Tr. 310.)
 {¶ 35} "Absent an admission, proof of defendant's purpose or specific intent invariably requires circumstantial evidence." State v.George, Franklin App. Nos. 02AP-1412 and 02AP-1413, 2003-Ohio-6658. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 36} Here the trier of fact clearly weighed the evidence and the credibility of witnesses in favor of the State. Our own review of the record reveals the same. Parker testified that he began work at Global Seafood, a seafood *Page 12 
distributor, several weeks prior to attempting to cash the checks. (Tr. 275.) However, the check in question came from Saunacore, a hot tub and sauna manufacturer. Although Parker testified that he was hired to be a distributor for Global Seafood, he had no warehouse facility or business account established. (Tr. 282-83.)
 {¶ 37} Furthermore, Parker testified that his job responsibilities included collection of monies on behalf of Global Seafood. (Tr. 277.) However, Parker's defense is further suspect because Global Seafood allegedly instructed him to deposit the funds into his personal account. (Tr. 298.) Global Seafood never gave Parker permission to cash the checks.
 {¶ 38} Therefore, it does not appear that the jury clearly lost its way and created a manifest miscarriage of justice when it found Parker guilty of both counts of forgery.
 {¶ 39} Parker also argues that his conviction for attempted theft is against the manifest weight of the evidence. The offense of theft, as charged, is set forth in R.C. 2913.02(A) as follows:
 "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (3) By deception * * *." *Page 13 
 {¶ 40} Furthermore, the "attempt" statute reads:
 "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).
 {¶ 41} In the case sub judice, Parker attempted to deprive Check Smart of $26,958 by deception. "Deception" is defined as:
 "[K]nowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).
 {¶ 42} Parker attempted to deceive Check Smart by presenting a forged check as an authentic check. Parker's representation was false and misleading because the payor, Saunacore, did not issue the check to Parker and Parker withheld that information from Check Smart. In doing so, Parker attempted to exert control over $26,958. Our analysis regarding Parker's knowledge of the forgery applies equally here.
 {¶ 43} As such, in reviewing the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses and in resolving conflicts in the evidence, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice when it convicted Parker of *Page 14 
two counts of forgery and one count of attempted theft and not guilty of the remaining counts.
 {¶ 44} Parker's second assignment of error is overruled.
 {¶ 45} ASSIGNMENT OF ERROR NUMBER THREE
 "Defense counsel was ineffective when he failed to object to clearly irrelevant and unfairly prejudicial testimony and when he failed to prepare appellant's case so that the jury would hear relevant defense character evidence (T. 173-181; 518)."
 {¶ 46} Parker argues that his counsel was ineffective for failing to object to certain testimony and for failing to introduce certain character evidence at trial.
 {¶ 47} To establish a claim for ineffective assistance of counsel, Parker must satisfy the two-prong test set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668: First, Parker must prove that trial counsel's performance was deficient, namely, that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment; and second, that the deficient performance prejudiced the defense, depriving defendant of a fair trial.
 {¶ 48} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at paragraph 2(b) of syllabus. *Page 15 
 {¶ 49} Parker first contends that counsel was ineffective for failing to object to the challenged testimony in his first assignment of error. However, in light of our ruling on Parker's first assignment of error, we cannot find that trial counsel's performance was deficient or that counsel's failure to object deprived Parker of a fair trial.
 {¶ 50} Parker also argues that his counsel was ineffective, and admitted so, in closing arguments when counsel said the following:
 "Other than being in jail for this case * * * Ron has not been in jail. He's not a career criminal.
 It didn't come out because I failed to ask him about it, but he was a teacher when he came back from Michigan. And shortly after that, after his father went into the rest home, he did move into the home with his mother and did work for the City of Cleveland for awhile, and then they down sized his job and he found himself back into the work market again.
 That was my fault." (Tr. 518-519.)
 {¶ 51} Whether deficient or not, we cannot find that the outcome of trial would have been different if this information had been introduced during trial. Despite failing to elicit testimony from Parker that he used to be a teacher and that he returned home when his father went into a nursing home, counsel did elicit the following: Parker earned his high school diploma from Shaker Heights High School (Tr. 266); Parker graduated from Cleveland State University after majoring in both political science and management labor relations (Tr. 266-268); *Page 16 
Parker is divorced and has two children (Tr. 266); Parker is currently employed at Global Mortgage as a mortgage loan officer (Tr. 267); Parker previously worked for companies including Comerica Bank, A.G. Financial, Flag Star Bank, First Metropolitan Mortgage, and the Boy Scouts of America (Tr. 267-269); that Parker also paints and works in construction to make ends meet (Tr. 270). Therefore, even without the information mentioned in closing arguments, the record is replete with good character evidence and thus, it cannot be said that the outcome of trial would have been different if counsel had elicited the information at issue from Parker.
 {¶ 52} Parker's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 17 
 COLLEEN CONWAY COONEY, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR *Page 1