[Cite as *State v. Keller*, 2017-Ohio-2609.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26920 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-1782 |
| | : | |
| MICHAEL KELLER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of April, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

SCOTT S. DAVIES, Atty. Reg. No. 0077080, 1900 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Michael Keller, appeals from his conviction for one count of trespass in a habitation, a fourth degree felony in violation of R.C. 2911.12(B). Keller, who has previously been convicted of felony offenses, argues that his instant conviction should be overturned because the trial court erred by allowing the State to introduce evidence regarding three of his prior convictions for purposes of impeachment. Additionally, Keller argues that his instant conviction should be overturned because the admission of his prior convictions resulted in a needless presentation of cumulative evidence. We find that the trial court did not err by admitting evidence of Keller's prior convictions. Therefore, we affirm.

## I. Facts and Procedural History

{¶ 2} At or around 11:45 p.m. on June 16, 2015, the residents of 24 Calumet Lane in Jefferson Township were awakened by a loud disturbance at their front door. When they investigated, they found Keller standing in their living room. Keller locked the door and asked for permission to stay, telling them that somebody had been chasing him. One of the residents called 911, and within a few minutes, a deputy with the Montgomery County Sheriff's Office arrived and placed Keller under arrest. Upon being taken into custody, Keller again indicated that he was being chased.

{¶ 3} A Montgomery County grand jury issued a two-count indictment against Keller on July 9, 2015, charging him with trespass in a habitation and criminal damaging, although the State subsequently dismissed the latter charge. On October 26, 2015, the case proceeded to a jury trial. During opening statements, Keller's attorney stated that near midnight on June 16, 2015:

[Keller] was out and around 24 Calumet Lane * * *. While he was there, he came across a group of [people] who started chasing him. He was afraid for himself, so he ran to the nearest location[1] [sic] on West 3rd [Street]. He had hoped that by running there * * * the police would arrive [and] help him. When that didn't happen, he ran * * * across the street [to 24 Calumet Lane], [and] started pounding on the front door asking for help.

Trial Tr. 15-16. Once inside, by this account, Keller asked to be allowed to remain, telling the residents that " '[t]hey're [sic] chasing me.' " *Id.* at 16. Two of the residents, and the deputy who arrested Keller, confirmed in their testimony that Keller claimed he was being chased; Keller himself did not testify. *Id.* at 22-23, 37, 61-62, 95-96.

{¶ 4} Over Keller's objection, the trial court permitted the State to introduce evidence concerning three previous convictions for theft offenses, all of which were felonies. *Id.* at 52-60, 74-80, 89-90. The trial court gave a limiting instruction to the jury at that time, and in its final charge, included an instruction on necessity. *Id.* at 91-92, 112, 119-120. During their closing arguments, the State and Keller's attorney again addressed Keller's assertion that he entered into the residence at 24 Calumet Lane because somebody had been chasing him. *Id.* at 122-126. The jury found Keller guilty of trespass in a habitation as indicted. *Id.* at 142.

## II. Analysis

{¶ 5} For his sole assignment of error, Keller states that:

---

[1] Keller's attorney did not clarify the meaning of the phrase "nearest location," but it might have been a reference to one or more businesses and a Greater Dayton Regional Transit Authority bus stop in the vicinity of 24 Calumet Lane, which were mentioned during the testimony of the deputy who arrested Keller.

THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE INTRODUCTION OF THREE PRIOR CONVICTIONS FOR THEFT OFFENSES TO IMPEACH MR. KELLER.

**{¶ 6}** Because "a trial court exercises discretion in its decision to exclude or admit evidence, [the] standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error." *State v. Cassel*, 2016-Ohio-3479, 66 N.E.3d 318, ¶ 13 (2d Dist.) (citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19; *State v. Graham*, 58 Ohio St.2d 350, 390 N.E.2d 805 (1979)). Generally, " 'abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence.' " *Id.* (quoting *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶ 16 (2d Dist.)). A "decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* (citing *State v. Jones*, 2d Dist. Montgomery Nos. 25315 & 25316, 2013-Ohio-1925, ¶ 32; *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 7). When "applying [this] standard, an appellate court may not merely substitute its judgment for that of the trial court." *Id.* (citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990)).

**{¶ 7}** According to Keller, the statements he made about being chased on the night of June 16, 2015 were initially raised at trial by the State through the testimony of two of the residents of 24 Calumet Lane. Appellant's Br. 4. On this basis, Keller characterizes the statements as hearsay, emphasizing that he did not testify himself. *Id.* at 4-5. He contends that by allowing the State to introduce evidence of three of his previous felony convictions to impeach the credibility of the statements, the trial court "effectively violated

[his] right to not testify against himself." *Id.* at 5.

**{¶ 8}** Keller's contention lacks merit. First, the record indicates that his account of being chased on the night of June 16, 2015 was initially raised by his attorney during his opening statement, rather than by the State. Trial Tr. 15. Second, the case law on which he relies for support is not squarely on point.

**{¶ 9}** In *State v. Martin*, 2d Dist. Greene No. 86 CA 59, 1987 WL 12956 (June 19, 1987), we considered the appeal of Michael Martin, who had been convicted of two counts of breaking and entering, and one count of theft. At Martin's trial, the State adduced testimony from police detectives regarding out-of-court statements he had purportedly made to them—apparently at or around the time of his arrest—and then, to impeach the credibility of these statements, introduced evidence that Martin had previously been convicted of theft offenses. *Martin*, 1987 WL 12956, *1-2. Although we affirmed the trial court on other grounds, we held that because "Martin did not testify at [his] trial," the "use of prior convictions in this manner is beyond the scope of Evid.R. 609(A), and without question, * * * was erroneous." *See id.* at *2.

**{¶ 10}** Our decision in *Martin* is not squarely on point because, in that case, the State raised the issue of Martin's out-of-court statements. *See id.* at *2-3. Given that Martin had chosen not to appear as a witness on his own behalf, the provisions of Evid.R. 609(A) did not apply. In this case, by contrast, Keller's attorney first placed Keller's statements about being chased on the record during opening statements, hoping that the jury would believe that Keller was, in fact, being chased. The State was therefore entitled to introduce evidence challenging the credibility of Keller's statements.

**{¶ 11}** In *State v. Parker*, 8th Dist. Cuyahoga No. 90298, 2008-Ohio-3538, the

Eighth District considered the appeal of Ronald Parker, who had been convicted of forgery and attempted theft after trying to cash a forged check at a Check Smart store. At his trial, the State obtained testimony from the Check Smart employee to whom Parker presented the forged check for the purpose of identifying Parker and establishing his prior business relationship with Check Smart, including other alleged attempts to cash forged checks. *Id.* at ¶ 3, 11, 17-19. Parker argued that the admission of this testimony constituted plain error because it was irrelevant and unfairly prejudicial. *Id.* at ¶ 11-12. Finding that the trial court did not err, the Eighth District held that the challenged testimony was neither irrelevant nor unfairly prejudicial because, among other things, Parker's own "counsel utilized Parker's history with Check Smart as part of his defense in his opening argument." *Id.* at ¶ 19.

{¶ 12} We recognize that the Eighth District also approved of the admission of the testimony because it included "no clear reference * * * that Parker committed another crime or alleged bad act," but the testimony had been elicited in response to a specific issue raised during opening statements by Parker's attorney, who "raised as a defense that it would be nonsensical for Parker to * * * attempt to cash a forged check in a place where he regularly conduct[ed] business or [was] otherwise known." *Id.* at ¶ 18. The permissible scope of the testimony, then, was verification of Parker's identity and characterization of his business relationship with Check Smart, rather than a challenge to his credibility, because his defense did not implicate his credibility.

{¶ 13} In their briefs, Keller and the State argue that Keller's account of being chased constitutes hearsay. Evid.R. 801(C) defines the term "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." Here, Keller's attorney first made mention on the record of Keller's statements about being chased. Trial Tr. 15. Keller, in other words, hoped to convince the jury of the truth of his out-of-court statements. *Id.* at 15-16. The State, however, was first to enter Keller's statements about being chased into evidence. *Id.* at 22-23. Its use of Keller's statements was not to prove the truth of his assertion that he was being chased; instead, the State sought to prove the falsity of the matter asserted, i.e. that Keller's claim of being chased was a fabrication. This does not satisfy the definition of "hearsay" set forth in Evid.R. 801(C). *See also* Evid.R. 801(D)(2)(a)-(b).

{¶ 14} Our determination that Keller's statements are not hearsay obviates the need to consider the applicability of Evid.R. 806(A). Yet, even if the statements were hearsay, we believe that the outcome would be the same. Though choosing not to testify, Keller nevertheless intended to rely on the defense of necessity, which he presented to the jury during his opening statement. Trial Tr. 16. He argues on appeal that because he did not testify, the State did not have the right to challenge the credibility of his assertion that he was being chased. In effect, Keller seeks to have it both ways.

{¶ 15} We find that Keller's statements about being chased were not hearsay under Evid.R. 801(C) and (D)(2)(a)-(b). Given that the statements were not hearsay and were initially raised at trial by Keller during opening statements, we hold that the trial court did not abuse its discretion by allowing the State to introduce evidence of his previous convictions to impeach the credibility of the statements. *See Parker*, 2008-Ohio-3538, ¶ 17-19; *see also State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 35 (4th Dist.) (determining in a roughly comparable case, albeit involving use of hearsay,

that defense counsel's reliance on the challenged testimony "during his opening statement" implicated " 'the invited-error doctrine, [pursuant to which] a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make' " (quoting *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 254, 648 N.E.2d 1355 (1995))).

{¶ 16} Additionally, Keller argues that the introduction of evidence of three of his previous convictions was "simply a needless presentation of cumulative evidence" because "every single witness [who] actually testified * * * [stated] that there was nothing to support [his] story of being chased." Appellant's Br. 5-6. Yet, the two residents of 24 Calumet Lane who testified at Keller's trial indicated only that they observed nothing to corroborate his story after he had already been arrested. Trial Tr. 29-30, 37-38, 46-48. The deputy who arrested Keller, furthermore, testified similarly that he saw nothing as he drove to 24 Calumet Lane in his cruiser, and that after making the arrest, he and his colleagues did not conduct a thorough search for evidence that anybody had been chasing Keller. *Id.* at 63-72. Thus, the challenge to Keller's credibility through the introduction of his previous felony convictions was not a needless presentation of cumulative evidence because the foregoing testimony failed to foreclose the possibility that the person or persons allegedly chasing Keller had fled the area without being observed.

### III. Conclusion

{¶ 17} We find that the trial court did not abuse its discretion by allowing the State to introduce evidence of three of Keller's previous felony convictions to impeach the credibility of his claim to having been chased to 24 Calumet Lane. Therefore, Keller's

single assignment of error is overruled, and the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


HALL, P.J. and WELBAUM, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Meagan D. Woodall
Scott S. Davies
Hon. Dennis J. Langer